UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**ROBERT L. BROWN**                                                                             **PLAINTIFF**

    **vs.**                     **CASE NO. 3:10-CV-00317 BD**

**MICHAEL J. ASTRUE, Commissioner**
**Social Security Administration**                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Brown appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") that denied his claim for Supplemental Security income ("SSI") under Title XVI of the Social Security Act ("Act"). Because substantial evidence supports the Commissioner's decision, it must be AFFIRMED.

**I.**     **Background:**

Mr. Brown applied for SSI on February 28, 2008, alleging disability since January 1, 2000, as a result of mental illness, ankle problems, and diabetes. (Tr. 29, 88-90, 95, 100) A hearing was held before an Administrative Law Judge ("ALJ")[1], on August 20, 2009. (Tr. 23-42, 71-73, 79-80) Mr. Brown testified at the hearing, as did Dianne G. Smith, a vocational expert. (Tr. 26-41)

The ALJ denied Mr. Brown's claims on October 7, 2009. (Tr. 10-22) The Appeals Council denied Mr. Brown's request for reconsideration on November 15, 2010,

---

[1] The Honorable Lesly W. Mattingly.

making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5) Mr. Brown then filed this appeal. The parties have completed briefing the case, and it is ready for decision.

At the time of the hearing, Mr. Brown was 46 years old and lived in Blytheville, Arkansas with his mother. (Tr. 26) He had completed the 11th grade and later had received a General Educational Development ("GED") certificate. (Tr. 26-27) In addition, Mr. Brown reported having had some vocational training. (Tr. 27) He had past work experience as a general laborer, but had never held a full-time job. (Tr. 28) Mr. Brown had spent most of his adult life in prison, having been incarcerated nine different times.[2] (Tr. 35-36)

## II.   Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a so-called "Listed" impairment, that is an impairment or combination of impairments listed in 20 CFR Part 404, Subpart P, Appendix 1; (4) if not, whether the

---

[2] Mr. Brown's history of incarceration is included solely as a possible explanation for his failure, at age 46, ever to have held a full-time job.

impairment (or combination of impairments) prevented the claimant from performing past relevant work[3]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

The ALJ found that Mr. Brown had not engaged in substantial gainful activity since February 28, 2008, the date he filed his SSI application, and further found that Mr. Brown suffered from several severe impairments – diabetes mellitus; ankle fracture post-surgical repair; depressive disorder; anti-social personality disorder; and poly-substance abuse. (Tr. 12) He found that Mr. Brown's impairments did not meet or equal a Listed impairment, but that when Mr. Brown's substance abuse disorder was considered in combination with his other impairments, he had "marked limitations relating adequately to supervisors and coworkers; tolerating the routine stress of a working environment; and maintaining adequate attention and concentration." (Tr. 14) However, when Mr. Brown abstained from abusing drugs and alcohol, he could function at an unskilled level, according to the ALJ. (Tr. 20) The ALJ also judged that Mr. Brown would be limited to sedentary work, based on problems with his ankle. (Tr. 19)

The ALJ concluded that Mr. Brown was not able to perform his past relevant work as a laborer because that work is classified as light to medium. (Tr. 21) Given that

---

[3] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

finding, the burden shifted to the Commissioner to demonstrate that Mr. Brown was able to perform other work in the national economy.

The ALJ found that Mr. Brown could perform a full range of unskilled, sedentary work, noting that Rule 201.21 directed a finding of "not disabled," given Mr. Brown's age, education, and work experience. (Tr. 21, Findings 10 and 11). An ALJ may use the Medical-Vocational Guidelines ("Grids") to find that a claimant is not disabled if the claimant does not have non-exertional impairments or if, as determined here, the nonexertional impairments do not diminish the claimant's residual functional capacity to perform the full range of activities listed in the guidelines. *Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999).

### III.   Plaintiff's Issues for Reversal:

For reversal, Mr. Brown argues that the ALJ erred in using the Grids to find him not disabled. Specifically, he argues that, because his non-exertional impairments significantly affected his residual functional capacity, the Grids were not controlling and should not have been used to direct a conclusion of "not disabled." (Plaintiff's Brief, p. 10, citing *Muncy v. Apfel*, 247 F.3d 728, 735 (8th Cir. 2001)). Mr. Brown also contends that the ALJ erred in not giving more weight to his testimony about his non-exertional impairments, including his diabetes and ankle pain.

The Commissioner responds that where, as here, a claimant's non-exertional impairments do not diminish or significantly limit his residual functional capacity to

perform the full range of "Guideline-listed activities," use of the Grids is permitted. (Defendant's Brief, p. 5, *citing Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)). He argues that substantial evidence supports the findings regarding Mr. Brown's residual functional capacity and also that the ALJ properly considered Mr. Brown's testimony.

## IV. Discussion:

### A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Johnson v. Astrue*, 627 F.3d 316, 319 (8th Cir. 2010); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id.* (citing *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision. But the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. *Medical-Vocational Guidelines* ("Grids")

Plaintiff argues that, because of his non-exertional mental impairments, ankle pain, and diabetes, the ALJ should not have relied on the Grids. Clearly, the ALJ could properly rely on the Grids if Mr. Brown's non-exertional impairments did not diminish or

significantly limit his residual functional capacity to perform the full range of sedentary work. *Shannon*, 54 F.3d at 488. The question, then, is whether substantial evidence supports the ALJ's determination that Mr. Brown retained the functional capacity to perform the full range of activities required for unskilled, sedentary work.

1. *Mental Impairments*

Here, the ALJ specifically considered Mr. Brown's mental impairments in assessing residual functional capacity, and the decision includes a comprehensive discussion of the evidence relating to Mr. Brown's mental impairments. (Tr. 17-21). As the ALJ noted, although Mr. Brown attended two sessions for mental health treatment at Mid South Health Systems ("Mid South") in the Spring of 2008, he neither sought nor received any further mental health treatment after April of 2008. (Tr. 19, 285-303) According to Mid South treatment notes, Mr. Brown was supposed to return one month after his April 29, 2008 appointment, but failed to do so. (Tr. 317, 31) At the hearing, Mr. Brown at first testified that he did not return because he could not afford treatment, but his attorney later acknowledged that cost was apparently not a factor. (Tr. 30)

It was not error for the ALJ to consider Mr. Brown's lack of mental health treatment in assessing the credibility of his subjective complaints of disabling mental health problems. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).

The ALJ also considered, and discussed at length, the consultative examination report of Mary Ellen Ziolko, Ph.D., and incorporated her findings in determining Mr.

Brown's residual functional capacity. (Tr. 19, 224-229). Dr. Ziolko's noted that, although Mr. Brown communicated in a socially adequate manner during her evaluation of him, he should be limited to incidental contact with others. (Tr. 17, 19-20, 228). Dr. Ziolko's also opined that Mr. Brown might have difficulty with the typical mental or cognitive demands of basic work-like tasks due to his depression and concentration problems. Based on these assessments, the ALJ limited Mr. Brown to simple work where the complexity of one- or two-step tasks was learned and performed by rote, with few variables and little judgment, and the supervision required was simple. (Tr. 17, Finding 6, 20, 228).

As noted, the ALJ determined that Mr. Brown could perform only unskilled, sedentary work. (Tr. 17) For purposes of the Social Security regulations, "unskilled work," by definition, requires "little or no judgement to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). In sum, the ALJ accounted for all of Mr. Brown's symptoms that would limit his residual functional capacity.

But Mr. Brown also argues that the ALJ did not properly consider his low Global Assessment of Functioning ("GAF") scores that ranged from 41 to 45. In fact, the ALJ acknowledged Mr. Brown's low GAF scores but explained, correctly, why low GAF scores are not controlling. (Tr. 20) As the ALJ noted, in spite of his GAF scores, Mr. Brown admitted that he could "shop independently, manage his own finances, perform

household chores, and run errands with his mother." (Tr. 20, 38)  It is also relevant that a mental health examiner at Mid South Health Systems noted that Mr. Brown had, "no impairment of his cognitive functioning." (Tr. 20, 316)

Significantly, Mr. Brown admitted that he did not have any symptoms of depression or anxiety while he was incarcerated (and presumably unable to abuse drugs and alcohol). (Tr. 20, 224, 287, 293-294, 318)  And medical intake records from the Arkansas Department of Correction indicate that Mr. Brown reported no mental health history and note that "no mental health disorder [was] apparent." (Tr. 181)

The ALJ appropriately inferred that Mr. Brown was "capable of functioning at the unskilled level when he abstains from drug and alcohol use." (Tr. 20)  This conclusion is bolstered by Dr. Ziolko's opinion that Mr. Brown's depression could be a result of his substance abuse. (Tr. 19, 227)

Evidence of heavy drug and alcohol use permeates the record and lends weight to the ALJ's finding that drug and alcohol abuse were a significant source of Mr. Brown's mental problems.  Mr. Brown denied that he was still abusing drugs and alcohol at the time of the August 2009 hearing, but medical records show a long history of substance abuse.  Mr. Brown admitted using copious amounts of alcohol as well as several illegal street drugs as late as the year before the hearing.

When Mr. Brown was admitted to St. Bernard Regional Health Center with a broken ankle in February of 2008, he reported smoking two packs of cigarettes per day, drinking "heavily," and using marijuana. (Tr. 218)

On March 27, 2008, Mr. Brown reported to Dr. Ziolko, a consultative psychologist, that he had used cocaine, PCP[4], and marijuana a month before, but that he had not used heroin in a long time. He also told Dr. Ziolko that he usually drank a pint of liquor a day and had a history of blackouts from substance abuse. (Tr. 225)

Records from Mid South, about one month after the consultative examination with Dr. Zioldo, indicate that Mr. Brown reported using powder cocaine three times per month, smoking crack cocaine, using marijuana on a daily basis, and consuming alcohol daily – "at least a 12-pack." (Tr. 315) At that appointment, Mr. Brown refused placement in a rehabilitation facility to address his substance abuse problem. (Tr. 317)

In sum, the ALJ's finding that Mr. Brown's drug and alcohol use contributed to his mental problems is supported by substantial evidence in the record.

---

[4] PCP (phencyclidine) is an hallucinogenic drug that causes users to become agitated and delusional. The federal Drug Enforcement Agency lists PCP as a Schedule II drug.

      2.     *Subjective Allegations of Pain*

The ALJ specifically acknowledged and discussed the *Polaski* factors when he assessed Mr. Brown's subjective allegations of disabling pain. *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). (Tr. 18-19)  It was appropriate for the ALJ to discount Mr. Brown's subjective complaints of disabling pain based on his daily activities set out above.  Likewise, the ALJ could properly take into account the fact that Mr. Brown had worked "only sporadically prior to the alleged disability onset date" when considering whether disability was the reason for Mr. Brown's lack of employment.  (Tr. 20)  In addition, Dr. Ziolko opined that, "given [Mr. Brown's] history of anti-social behavior, it is possible that he may have been exaggerating [symptoms] or malingering."  (Tr. 227-228)

The ALJ acted within his discretion, based on the evidence in the record as a whole, in discounting Mr. Brown's subjective complaints and finding that his pain and mental impairments did not diminish his ability to perform the full range of sedentary, unskilled work.  For these reasons, it was not error for the ALJ to rely on the Grid to find that Mr. Brown was not disabled. (Tr. 21, Finding 11)  *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

3.   *Diabetes*

In addition to Mr. Brown's mental problems, the ALJ also specifically considered Mr. Brown's diabetes. (Tr. 19)  The ALJ properly considered the fact that Mr. Brown had not received treatment for diabetes since May of 2008. (Tr. 19, 341-346)  He also noted that while Mr. Brown was in prison and receiving medical attention, his blood sugar levels decreased significantly. (Tr. 19, 148-178)  An impairment that can be controlled with treatment or medication is not "disabling" for purposes of the Social Security Act. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment controllable with treatment or medication is not disabling).

Furthermore, as the ALJ noted, there is no medical evidence in the record to indicate that Mr. Brown had any significant complications from his diabetes. (Tr. 19)  Mr. Brown's spotty treatment for diabetes tends to lessen the weight afforded this impairment. *Sullins v. Shalala*, 25 F.3d 601, 603 (8th Cir. 1994) (holding that the claimant's lack of treatment since the alleged onset of disability date discredits his allegations of a disabling condition).

4.   *Ankle Problems*

According to the medical evidence, Mr. Brown broke his ankle in February of 2008 and subsequently had two surgeries to repair it. (Tr. 188-210, 251-258, 333-339)  By April 30, 2008, his surgeon, John F. Ball, M.D., noted that the wound was well healed, that the range of motion was "coming along," and that Mr. Brown would need to

return for treatment only as needed. (Tr. 333) Mr. Brown testified that he had to keep his leg elevated after sitting for thirty minutes, but there is no objective medical evidence to support this self-imposed limitation. (Tr. 32-33)

Even so, the ALJ limited Mr. Brown, who was a "younger individual" under the Act, to sedentary work. Sedentary work, by definition, includes a significantly restricted range of work.[5] Individuals who are limited by their medical impairments to performing only sedentary work have serious functional limitations. Social Security Ruling 96-9p, 1996 WL 374185 at *3. By limiting Mr. Brown – a younger individual – to sedentary work, the ALJ adequately accounted for Mr. Brown's ankle pain and swelling, even though there was scant objective medical evidence of serious on-going ankle problems.

## V. Conclusion:

Considering all of the evidence in the record as a whole, there is ample evidence to support the finding that Mr. Brown was not disabled, for purposes of the Social Security Act. Accordingly, the Commissioner's decision is AFFIRMED.

DATED this 4th day of January, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5] "Sedentary" work involves lifting no more than ten pounds at a time and occasionally lifting/carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 416.967(a)